Raymond L. BUCKELEW and James Laney Jenkins, Petitioners-Appellants,

v.

UNITED STATES of America, Respondent-Appellee.

Judson Lee DRANE, Petitioner-Appellant,

v.

UNITED STATES of America, Respondent-Appellee.

No. 77–2405.

United States Court of Appeals, Fifth Circuit.

June 19, 1978.

---

R. W. Laster, James F. Lane, Little Rock, Ark., for petitioners-appellants.

Edward L. Shaheen, U.S. Atty., Dosite H. Perkins, Jr., First Asst. Atty., Joseph S. Cage, Jr., Asst. U. S. Atty., Shreveport, La., for respondent-appellee.

Before MORGAN and GEE, Circuit Judges, and KING,* District Judge.

GEE, Circuit Judge:

Appellants Buckelew and Jenkins were convicted under 18 U.S.C. § 1343 of using interstate telephone facilities in carrying out a scheme to defraud certain hotel casinos in Las Vegas, Nevada. They were also convicted of conspiring to violate section 1343, as was Judson Drane, whose appeal · has been consolidated with theirs.

All three appellants petitioned the district court to set aside their sentences under 28 U.S.C. § 2255, alleging that the following errors occurred at their trial: (1) the trial judge frequently interrupted defense cross-examination with jokes, stories, and personal reminiscences and made prejudicial comments before the jury; (2) none of the foregoing appears in the record because the trial judge ordered the court reporter to omit it, as well as any objections to the matter or to the incompleteness of the record; (3) the trial judge took the jury into his chambers at one point in the trial to show them what a rotary telephone looked like, that evidence being relevant to the case; (4) the trial judge became ill during the proceedings to the point of falling asleep while instructing the jury; and (5) the jury was rushed into a verdict by both the judge and bailiff. Each of these claims receives support from the bystander's affidavit of one Boydie Morris, who observed the trial but whose identity is not further divulged. Buckelew and Jenkins advance two more claims in their joint motion: first, that the trial judge improperly refused to grant them indigent status during the trial; and, second, that their attorney was incompetent both at trial and on appeal. Both of these claims are supported by an affidavit given by present counsel for Buckelew and Jenkins. In the affidavit counsel states his belief that the section 2255 motion of his clients has merit and that their allegations will be proved by the testimony of various witnesses.

The district court dismissed appellant's section 2255 motions without an evidentiary hearing. This dismissal was clearly correct with respect to the claims that the jury was rushed into a verdict and that Buckelew and Jenkins were improperly denied indigent status. These issues have already been decided by this court in *United States v. Scallion,* 533 F.2d 903, 919–20 (5th Cir. 1976), *cert. denied,* 429 U.S. 1079, 97 S.Ct. 824, 50 L.Ed.2d 799 (1977), and a mat-

---

* District Judge of the Southern District of Florida, sitting by designation.

ter need not be reconsidered on a section 2255 motion if it has already been determined on direct appeal, *see Vernell v. United States,* 559 F.2d 963 (5th Cir. 1977), *petition for cert. denied,* —— U.S. ——, 98 S.Ct. 1876, 55 L.Ed.2d 388 (1978); *Fuentes v. United States,* 455 F.2d 910, 911 (5th Cir. 1972); *Smith v. United States,* 420 F.2d 690 (5th Cir. 1970). We likewise affirm the disposition of the claims regarding the trial court's off-record comments and conduct, four of which raise no issue of a constitutional violation and thus are not cognizable for review under section 2255. The remainder were waived by appellants' procedural default in failing to challenge the incompleteness of the record in accordance with Rule 10(e) of the Federal Rules of Appellate Procedure. As to the final claim of attorney ineffectiveness, the district court concluded that it lacked support in the record, and we agree.

I. *Unrecorded Judicial Misconduct.*

 Unless they amount to constitutional violations, prejudicial comments and conduct by a judge in a federal criminal proceeding are not proper subjects of collateral attack, *see Kaufman v. United States,* 394 U.S. 217, 222–23, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969); *Hill v. United States,* 368 U.S. 424, 428–29, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), and are waived if not brought up on direct appeal, *see Brown v. United States,* 480 F.2d 1036, 1038 (5th Cir. 1973). As one court eloquently put the matter:

The fact that a trial court error is prejudicial to [a] defendant does not ipso facto fasten the taint of partiality, in the Sixth Amendment sense, upon a jury . . . . If this were true every injudicious remark from the bench, every erroneous admission or exclusion of evidence, every giving of an incorrect instruction or refusal to give a correct instruction, which could be cause for reversal on a direct appeal, would present a constitu-

tional question which could be raised for the first time in a collateral proceeding years after the conviction.

Nor does the fact that a trial court error is prejudicial to [a] defendant necessarily transform an otherwise fair trial into one which offends Fifth Amendment due process. It does not do so unless it has the effect of converting what was otherwise a fair trial into one which is repugnant to an enlightened system of justice.

*Vandergrift v. United States,* 313 F.2d 93, 96 (9th Cir. 1963) (footnote omitted). Thus, what we must initially decide is whether the errors alleged by appellants could have rendered their trial fundamentally unfair. *See Gissendanner v. Wainwright,* 482 F.2d 1293, 1300 (5th Cir. 1973) (appendix to opinion); *Young v. Alabama,* 443 F.2d 854, 855 (5th Cir. 1971), *cert. denied,* 405 U.S. 976, 92 S.Ct. 1202, 31 L.Ed.2d 251 (1972); *Scalf v. Bennett,* 408 F.2d 325, 327 (8th Cir.), *cert. denied,* 396 U.S. 887, 90 S.Ct. 175, 24 L.Ed.2d 161 (1969).[1]

 Four claims of judicial misconduct set forth by appellants fail to articulate due-process violations. First, during the trial the judge supposedly told the jury that his bailiff was a sharpshooter and acted as his bodyguard at all times. According to appellants this statement suggested that defendants were dangerous men. Even if the judge did make this statement, we doubt whether the jury interpreted it in the way appellants contend. At any rate, the statement certainly did not render appellants' trial fundamentally unfair. The second nonconstitutional claim advanced by appellants is that the trial judge was ill during part of the trial and even fell asleep while instructing the jury. Since we are told no specific error resulting from the trial judge's alleged physical condition, a due process violation has not been made out. It is not error to be ill. *See United*

---

1. Although these cases involve petitions by state prisoners under § 2254, rather than federal prisoners under § 2255, the standard for reviewing trial errors is the same. *See Davis v. United States,* 417 U.S. 333, 343–44, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974); *Larson v. United States,* 275 F.2d 673, 676 & n.5 (5th Cir.), *cert. denied,* 363 U.S. 849, 80 S.Ct. 1627, 4 L.Ed.2d 1732 (1960).

*States v. Boswell*, 565 F.2d 1338, 1342 (5th Cir. 1978); *Haith v. United States*, 342 F.2d 158, 159 (3d Cir. 1965). The third uncognizable claim is appellants' allegation that, following testimony regarding the operation of rotary telephones, the trial judge took the jury into his chambers to show them a rotary telephone. If this occurred we do not condone it, but we entirely fail to see how it could have rendered appellants' trial fundamentally unfair, since the operation of a rotary phone is hardly inflammatory evidence and since a jury view of the telephone probably added little to the in-court testimony.[2] The final nonconstitutional claim is that the trial judge interrupted the trial with jokes, stories, and personal reminiscences. Again, we do not approve of storytelling in the courtroom, but we doubt that it ever would render a trial fundamentally unfair unless it completely thwarted the introduction of evidence, which was not the case here.

Constitutional questions are arguably raised by appellants' remaining claims of judicial impropriety: that the judge often told the jury that the case should not take long to try and that it was a shame that the jury had to sit through such long, drawn-out proceedings; and that the judge said in front of the jury that it was too bad defendants "didn't swindle a syndicate joint" so the "government wouldn't have to prosecute them." The government argues that these remaining claims were also waived by appellants' failure to raise them on appeal, but we cannot agree. Failure to appeal a constitutional issue is not a bar to relief under section 2255 unless "a *deliberate* choice not to appeal is made by conscious election." *McKnight v. United States*, 507 F.2d 1034,

1036 (5th Cir. 1975) (emphasis in original). The standards for finding a deliberate bypass are rigid, *Montgomery v. Hopper*, 488 F.2d 877, 879 (5th Cir. 1973), and proof of bypass typically involves a showing that the prisoner secured some tactical advantage by not pressing his claim earlier, *see Morris v. United States*, 503 F.2d 457, 459 (5th Cir. 1974); *Larson v. United States*, 275 F.2d 673, 674, 679 (5th Cir.), *cert. denied*, 363 U.S. 849, 80 S.Ct. 1627, 4 L.Ed.2d 1732 (1960), *explained in McKnight v. United States*, 507 F.2d at 1036 n.2. Moreover, in most cases a deliberate bypass must itself be proved at an evidentiary hearing, unless it is clearly shown on the record, as when the trial transcript reveals an express waiver of the issue by defense counsel. *Coco v. United States*, 569 F.2d 367, 370–71 (5th Cir. 1978). We have no such proof in this case[3] and, for that reason, cannot dispose of these claims under the rubric of deliberate bypass.

Deliberate bypass is not, however, the only way in which a defendant can forego the opportunity to raise constitutional issues in habeas corpus proceedings: a failure to follow prescribed procedural rules can likewise foreclose habeas review, absent a showing of both cause for the default and prejudice resulting from it. *Evans v. Maggio*, 557 F.2d 430, 433 (5th Cir. 1977). *See Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973). In the instant case, appellants committed procedural default in failing to challenge the correctness of the record in accordance with Rule 10(e) of the Federal

2. Compare *United States v. Tanda*, 568 F.2d 1122 (5th Cir. 1978), in which the trial judge noted to the jurors that a suitcase was in evidence even though the prosecutor had not formally introduced it. We found no error in *Tanda* because the suitcase had been sitting in the courtroom, in full view of the jury, throughout the trial and had been discussed by attorneys for both the government and the defendant.

3. The only "proof" is that none of the four defense counsel on appeal raised the issue of unrecorded, prejudicial statements by the trial judge, even though they did object to other allegedly biased conduct of the judge that did appear in the record. *See United States v. Scallion*, 533 F.2d 903, 919 & n.19 (5th Cir. 1976), *cert. denied*, 429 U.S. 1079, 97 S.Ct. 824, 50 L.Ed.2d 799 (1977). While this may raise doubts about the truthfulness of appellants' claims, it does not establish deliberate bypass.

Rules of Appellate Procedure, stating that "[i]f any difference arises as to whether the record truly discloses what occurred in the district court, the difference shall be submitted to and settled by that court and the record made to conform to the truth."[4] Since appellants advance no excuse for disregarding this rule, we hold that the district court properly dismissed appellants' claims of unrecorded, prejudicial comments by the trial judge. *See St. John v. Estelle*, 544 F.2d 894, 895 (5th Cir.), *aff'd*, 563 F.2d 168 (5th Cir. 1977) (en banc).

 The procedural default rule has especially clear application to claims of incomplete records, it being appellate counsel's first duty to settle the record. Such claims are easily made and countenancing them would lead to the result predicted in *Bryan v. United States*, 492 F.2d 775 (5th Cir.) (en banc), *cert. denied*, 419 U.S. 1079, 95 S.Ct. 668, 42 L.Ed.2d 674 (1974), which dealt with a 2255 motion alleging an unkept, and unrecorded, plea bargain:

> No proceeding, not a single conceivable one, would enjoy the finality that decisional law must have to maintain its credence. Indeed, the number of hearings which a wilful affiant could provoke as to a single conviction would be limitless, for each time he could swear that someone at the last preceding hearing suborned false testimony from him or his lawyer or that the judge played false in the performance of his duties.

492 F.2d at 780. When appellants attack the validity of the record in this case, they seek to undermine the administration of appellate justice—justice that depends upon the crucial assumption that records and transcripts are accurate reflections of the facts pertinent to the issues on review. Moreover, we discern nothing unfair about requiring that the adequacy of the record be challenged in accordance with Rule 10(e), so that the matter can be resolved at a time, soon after trial, when the statements and conduct of the trial participants are still fresh in the minds of any bystanders who might be called on for evidence and appellate review can be conducted on an honest record. Doing otherwise converts direct appeal into a farce. In the instant case, Morris' affidavit, upon which appellants principally rely, was made over two years following the trial. After such a period of time, it is doubtful whether Morris, or any other possible witness to the trial, can remember the events of the proceeding with the degree of clarity necessary for a meaningful review of the prejudicial nature of any comments from the bench. In the analogous case of *Houston v. United States*, 419 F.2d 30 (5th Cir. 1969), decided before the advent of the procedural default rule, a defendant similarly precluded all but the most difficult method of reviewing .a claim of prejudice arising out of the trial judge's unrecorded conversation with the jury foreman. Defense counsel had neither objected to the conversation, nor had he asked that the conversation be transcribed. We refused to consider the 2255 motion, explaining that "[b]elated suggestions of possible prejudice in such instances are not favored on collateral attack, especially following a full review on appeal." 419 F.2d at 34.

## II. *Ineffective Counsel.*

 Buckelew and Jenkins finally contend that their former counsel, Thomas Robinson, now deceased, inadequately represented them at trial and on appeal because of his poor health. Since he was retained at trial, Robinson's efforts there are to be evaluated by the standard of competency for retained counsel: whether counsel's conduct rendered the trial fundamentally unfair or put the court on notice that his clients were not receiving effective legal representation. *Fitzgerald v. Estelle*, 505 F.2d 1334, 1336–37 (5th Cir.) (en banc), *cert. denied*, 422 U.S. 1011, 95 S.Ct. 2636, 45 L.Ed.2d 675 (1975). On appeal, however, Robinson served as appointed counsel, who must satisfy the more stringent test of rea-

---

**4.** Rule 10(e) also provides that "[a]ll other questions as to the form and content of the record shall be presented to the court of ap-peals." Thus, appellants could have contested on appeal any resolution of a dispute over the record by the trial court.

sonable effectiveness. *Salazar v. Estelle*, 547 F.2d 1226, 1227 (5th Cir. 1977); *Fitzgerald v. Estelle*, 505 F.2d at 1336.

 We see no reason to disturb the district court's finding that petitioners received effective legal assistance at their trial, especially since appellants make no adequate allegation of specific prejudice resulting from Robinson's supposed illness. *See United States v. Gray*, 565 F.2d 881, 887 (5th Cir. 1978); *Haggard v. Alabama*, 550 F.2d 1019, 1022 (5th Cir. 1977); *Herring v. Estelle*, 491 F.2d 125, 128–29 (5th Cir. 1974). Although appellants do contend that Robinson declined to call an out-of-state witness because he wanted to shorten the trial for his health's sake, appellants fail to state what helpful testimony that witness could have provided. Moreover, complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative. *See United States v. Doran*, 564 F.2d 1176, 1177–78 (5th Cir. 1977); *Haggard v. Alabama*, 550 F.2d at 1022. *But see Bell v. Georgia*, 554 F.2d 1360 (5th Cir. 1977) (defense lawyer relies solely upon his incarcerated client to secure appearance of crucial, and only, witnesses in defendant's favor). Appellants further contend that Robinson conducted plea negotiations without their knowledge, but we cannot see how this prejudiced them since they made no bargains and could have demanded further plea negotiations.

 As to the handling of their appeal, appellants again point to no specific error committed by their counsel but merely contend that he was "too old and sick" to represent them. Robinson was not, however, "too old and sick" to file a 46-page original brief, a 14-page reply brief, and a 16-page petition for rehearing, all of which presented cogent legal arguments in a well-written fashion. Accordingly, we also find no merit in appellants' claim of ineffective legal representation on appeal.

AFFIRMED.