[Cite as *State v. Dozier*, 2014-Ohio-2925.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellee | Hon. W. Scott Gwin, J.<br>Hon. John W. Wise, J. |
| -vs- | Case No. 2013 CA 00185 |
| WILLIAM DOZIER | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:          Criminal Appeal from the Court of Common
                                                        Pleas, Case No.  2013 CR 1014


JUDGMENT:                                   Affirmed


DATE OF JUDGMENT ENTRY:        June 30, 2014


APPEARANCES:

For Plaintiff-Appellee                         For Defendant-Appellant

JOHN D. FERRERO                          ANTHONY KOUKOUTAS
PROSECUTING ATTORNEY             116 Cleveland Avenue NW
KATHLEEN O. TATARSKY               808 Courtyard Center
ASSISTANT PROSECUTOR            Canton, Ohio  44702
110 Central Plaza South, Suite 510
Canton, Ohio  44702-1413

*Wise, J.*

{¶1}. Appellant William Dozier appeals from his conviction in the Court of Common Pleas, Stark County, on one count of felony domestic violence. The relevant facts leading to this appeal are as follows.

{¶2}. Appellant and S.D., the victim in this case, previously lived together in a romantic relationship. According to S.D., this lasted from April 2011 until approximately August 2011, during which time they shared living expenses.

{¶3}. On June 25, 2013, appellant was visiting S.D. at her apartment in Louisville, Ohio. That day, S.D. was upset because she thought appellant was picking on her and belittling her. At some point, the two left in S.D.'s van so he could help a friend in Canton work on a car. S.D. dropped appellant off in Canton and eventually returned to her apartment in Louisville. When she arrived, appellant was back in the apartment, even though he didn't have a key. S.D. was upset and walked to a nearby drugstore to use the restroom. Appellant followed her; at one point, as they were walking down the street, appellant spit on her. Appellant and S.D. then returned to the apartment.

{¶4}. Appellant grew violent and grabbed S.D. He put her on the bed and started to choke her with both hands. Appellant also took a wooden dining room chair and held it over S.D.'s head, stating "let me hit you in the temple and take you out." Appellant also grabbed an opened twenty-ounce can of hard lemonade and started hitting S.D. with it. She put her arms up to defend herself; appellant hit her arm, causing several lacerations. When appellant saw the blood, he stopped the assault and drove S.D. to the emergency room at Aultman Hospital in S.D.'s van.

{¶5}. S.D. was treated for bruises and lacerations which required stitches. When hospital personnel learned the cause of her injuries, they contacted the Louisville Police Department. Detective Cory Kidwell thereafter arrived at the hospital and interviewed S.D. She appeared "shaken up" and had obvious stitches in her hand and multiple bruises and abrasions on her forearm.

{¶6}. Louisville Police Officer Stephen Miller and Detective Cory Kidwell began a search for appellant. They discovered S.D.'s van in the parking lot of the apartment complex where she lived. Officer Miller knocked on S.D.'s apartment door; S.D., who by then had returned home via a cab, at first told Miller appellant was not present. However, Miller obtained permission from S.D. to search the apartment. Miller thereupon found appellant hiding behind the closet door. S.D. explained that when she returned from the hospital, appellant was in the apartment in her bed.

{¶7}. On August 14, 2013, the Stark County Grand Jury indicted appellant on one count of domestic violence, R.C. 2919.25(A). Because appellant had been convicted of two previous charges of domestic violence, the crime was elevated to a felony of the third degree.

{¶8}. Appellant entered a plea of not guilty, and the case proceeded to a jury trial on September 10 and 11, 2013 in the Stark County Common Pleas Court.

{¶9}. The State called three witnesses, including S.D. In addition, the State presented pertinent medical records of S.D. and photographs of her injuries taken at the hospital. Appellant stipulated to two prior convictions; the judgment entries reflecting these prior convictions and sentences were considered by the jury.

{¶10}. Appellant asked for and received a jury instruction on the offense of assault.

{¶11}. The jury ultimately found appellant guilty of domestic violence. The trial court sentenced appellant to a prison term of thirty-six months.

{¶12}. Appellant filed a notice of appeal on September 16, 2013. He herein raises the following sole Assignment of Error:

{¶13}. "I.   THE APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL ATTORNEY FAILED TO PRESENT EVIDENCE THAT WOULD HAVE CAST DOUBT ON THE ALLEGED VICTIM'S CREDIBILITY."

I.

{¶14}. In his sole Assignment of Error, appellant contends he was deprived of the effective assistance of counsel where his trial attorney failed to present certain evidence which would have purportedly affected the credibility of the victim, S.D.

{¶15}. Our standard of review for ineffective assistance claims is set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. Ohio adopted this standard in the case of *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373. These cases require a two-pronged analysis: First, we must determine whether counsel's assistance was ineffective; whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his or her essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's

unprofessional error, the outcome of the trial would have been different. *Id.* Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie* (1998), 81 Ohio St.3d 673, 675, 693 N.E.2d 267.

{¶16}. Appellant, emphasizing the importance of S.D.'s credibility in this matter, first points out that there were no third-party eyewitnesses to the altercation between appellant and S.D. Furthermore, in a case of criminal domestic violence, it is necessary for the State to prove that the defendant caused or attempted to cause physical harm to a "family or household member." *See* R.C. 2919.25(A). Pursuant to R.C. 2919.25(F)(1)(a)(i), the definition of family or household member includes "[a]ny of the following who is residing or has resided with the offender: * * * [a] spouse, a person living as a spouse, or a former spouse of the offender." R.C. 2919.25(F)(2) defines a person living as a spouse as "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." Because the State has not alleged that appellant was living with S.D. in June 2013, when the crime was committed, it became necessary for the State to prove that they had lived together within the prior five years.

{¶17}. During the trial, appellant's defense counsel cross-examined S.D. about her earlier direct testimony that she had lived with appellant during the year 2011, from approximately April to August. S.D. was asked if she was "a hundred percent certain it was 2011," to which she replied "[y]eah *** that I'm certain of ***." Tr. at 202. Later, during closing arguments, defense counsel told the jury that S.D. must either be lying or

was confused about the 2011 time frame, assuring the jurors they would be seeing a judgment entry from another case showing that appellant was sentenced to seventeen months in prison on January 5, 2011. *See* Tr. at 297. However, it is presently undisputed that defense counsel did not make any *additional* court documents available for the jury to review, or, to the extent necessary, call any records custodians to testify as to such documents.[1]

{¶18}. " '[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.' " *State v. Phillips,* Stark App.No. 2010CA00338, 2011–Ohio–6569, ¶ 26, quoting *Buckelew v. United States* (5th Cir.1978), 575 F.2d 515, 521. Furthermore, although appellant has questionably attached to his brief a copy of the docket and sentencing form from his 2011 conviction, as well as an affidavit he executed well after the notice of appeal was filed herein, it is not the task of an appellate court to speculate as to evidence dehors the record. *See State v. Lawless,* Muskingum App. No. CT2000-0037, 2002-Ohio-3686, citing *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 228, 448 N.E.2d 452.

{¶19}. As the State suggests in response, defense counsel's introduction of the full docket from 2010CR1439 would likely have revealed to the jury that S.D. was also the victim in that case, thus re-enforcing that she was a "household member" for purposes of a domestic violence charge against appellant in the case sub judice. We are therefore not persuaded that Appellant Dozier's trial counsel's performance fell

---

[1]    The 2011 case referenced by appellant is Stark County Common Pleas no. 2010CR1439. It was listed in the indictment herein as one of appellant's two prior domestic violence convictions for purposes of elevating the present charge to a felony.

below an objective standard of reasonable representation based on the proper record before us. Appellant's sole Assignment of Error is overruled.

{¶20}. For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.

By: Wise, J.

Hoffman, P. J., and

Gwin, J., concur.

JWW/d 0613